Lipscomb, J.
This motion was made and the affidavits in its support filed more than twelve months ago, and no counter affidavits have been filed nor any attempt made to impeach the credibility of the affiants. Under such circumstances I canuot entertain doubt but the bond attempted by Fitzgerald to be fraudulently imposed on this court was made after lie received notice that the suit had been dismissed for want of the transcript of the appeal bond. The suit had been dismissed on the 12th of January, 18-19. The certificate of authentication made out and sent up with the transcript of the bond, signed by Fitzgerald as the deputy clerk, bears the date of 18th of January, 1849. This would have given him time to have received the notice of the dismissal of the case in which he was the real appellant. But there are strong reasons to believe that this authentication is, like the bond, antedated. The transcript was not filed in this court, as will be seen by our clerk’s indorsement, until the 7th day of February, and Mi-. Wheeler, who stands nnimpeaciied, swears that lie did not execute the bond until February. It is not to bo believed that tweuty-ouo days would be permitted to elapse after liis authentication before it readied the city of Austin, when four (lays was the time allowed the contractor for the transmission of the mail from Houston to Austin. That Fitzgerald, the party most interested, and who, from his situation as deputy clerk, had peculiar facilities in executing it, stood alone without au accomplice or participator in the offense I can entertain no doubt. Seldom lias such an act of fraud and official delinquency been presented to (ho consideration of any court. What then is this court under sncli circumstances to do? Are we as judges to sit patiently and in quiet submission to being made the instruments by which this bad man and corrupt officer is to accomplish Iris villainy and to reap its benefits? Are wo with stoic indifference to say that although'we ourselves are convinced to a moral certainly that (lie sanctity of judicial records lias been invaded and most sacrilegiously violated and a forged bond foisted into the records of ora- court, we ai-e powerless; that we cannot look out of the record; that as an appellate court we can listen to no evidence against the record; if it is clothed with the forms and habiliments required by law we are bound to give it effect, although we are convinced beyond all doubt I hat it is a vile forgery? Is it true that wo are thus powerless, and that we. must be the instruments by which (lie criminal is to accomplish the end and object of his crimes? I cannot and I will not believe it. If we stood alone on (lie. question, without the aid of a precedent in point or from analogy, I would still say that every judicial tribunal, however organized and with whatever limitation's imposed on its jurisdiction, possessed the inherent right to protect itself from any fraudulent practice by which an attempt would or could be made !o make the judges the mere instruments for the accomplishment of such fraudulent practices; that this right is as essential to the existence of all judicial tribunals as the air we breathe to human life.
Note 06.“Dial i\ Hector, 12 T., 99; Johnson v. Robeson, 27 T., 52G; Hart u. Mills, 31 T., 304.
But we are not without precedents which, if not exactly iii point in features, yet from the principles on which they are founded and by analogy, fully sustain the power of the court to protect itself. The Supreme Court of the United States is an appellate court, ancl has no original jurisdiction; yet, from its earliest organization down to its last reported decisions, it has-maintained the right to receive and examine affidavits for the purpose of sustaining its jurisdiction. (Williamson v. Kincaid, 4 Dall. R., 20; Hagan v. Foison, 10 Pet. R., 160; The United States v. The Brig Union, 4 Cr. R., 216; Wilson v. Daniel, 3 Dall. R., 401; Lord v. Vezey, 8 How. R., 251.) These authorities go to show that the practice of tlie court is to loot beyond the record for the purpose of determining its jurisdiction. If a court so constituted can go beyond its records for that purpose, it could do so on any question necessary to its protection. Again, it is considered an imposition on the court to present for its trial or revision a feigned case ; and the rule is that a court of revision may determine, either by the inspection of the record or by evidence aliunde, whether such is the character of the suit. (Hoskins v. Lord Berkley, 4 Term R., 402; 3 Black. Com., 452; 3 Barn. & Cress. R., 597; Fletcher v. Peck, 6 Cr. R., 147, 148; Lord v. Vezey, 8 How. U. S. R., 251; and Smith v. Brown, decided in this court, unpublished.) These authorities establish this doctrine clearly to my judgment: that a court, though strictly a revising court, may, on a question of its own j urisdiction or to protect itself from the fraudulent practices of a party in interest, decide such question either by an inspection of the record or by resorting to evideuce aliunde. In the case cited from 8 Howard, of Lord v. Vezey, the motion was to dismiss because the case was a fictitious one. The motion was supported by affidavits and other documentary evidence, outside of the record, to show the truth of the charge suggested in the motion. And the motion was granted, and the cause was dismissed. The court believed that it was a fraudulent attempt to procure a decision to the prejudice of persons not parties to the record before it. This intent the record of itself never could have disclosed, and it was only reached by resorting to other evidence. The principle of this case will fnlty sustain my position, that we have the power to defeat and put the seal of judicial reprobation on the culprit, instead of being the passive instrument in the accomplishment of his fraudulent designs.
I believe, therefore, the motion ought to be granted and the cause dismissed, and such is the opinion of the court.
There was an argument made on another point by the counsel in favor of his motion that is worthy of notice, and perhaps, as a point of practice, ought to be settled. It is this : that the transcript of the bond, if it had been a valid one, did not come into this court in the way that it ought to have done to make it evidence. It was produced on motion by the appellant, and had no authentication but one voluntarily made by the clerk apart from his authentication of the record. It would have been, we believe, more correct in practice, when a party has evidence that a portion of the record has not been embodied in the transcript sent up, and he discovers this fact after the cause has been dismissed for the want of having such portion included, to malm his motion to the court suggesting such matter of diminution and supporting by affidavit or such other evidence as he can procure, and pray a special certiorari to the clerk of the court below to send up such matters as may have been omitted. The motion to dismiss is sustained.
Motion sustained.