## SIMEON HART v. WILLIAM W. MILLS.

There is a distinction between the right to admit proofs, *aliunde*, to show that the supreme court has no jurisdiction, and the same character of proof to show that the court below had no jurisdiction.

It has been the settled law of this court, ever since the decision in Harris v. Hopton, 5 Tex., 529, that proof, *aliunde*, will be heard touching the question of its own jurisdiction. (Paschal's Dig., Art. 1481, Note 583.)

Where from an affidavit of counsel and the appearance of the bond found in the record the signatures had been attached after the approval by the clerk, and the amount of the penalty and the condition had been changed, the presumption in favor of the clerk's certificate is removed, and the court being satisfied that the bond found in the record was in fact a blank, the case was dismissed for want of a bond.

The amendment to the district court act of 1858 reads as follows: "No writ of error, to remove a cause from the district to the supreme court, shall in any case issue, unless the plaintiff in error give bond, with sufficient security, for all the costs which may accrue in the supreme court, and which may have accrued in the district court." (Paschal's Dig., Art. 1517.) This section, taken in connection with the act of 13th of May, 1846, requires the bond to be executed within two years after the judgment sought to be revised has been rendered.

The writ-of-error bond is a condition precedent to be performed by the plaintiff in error, and it is an indispensable authority to the clerk for the issuance of the writ.

Both the bond and the petition for a writ of error are indispensable, and they must be filed by the clerk of the district court in the county where the judgment was rendered.

Filing a bond in the supreme court would not be a compliance with the law.

ERROR from El Paso. The case was tried before Hon. WILLIAM P. BACON, one of the district judges.

The suit was for false imprisonment. The plaintiff, Mills, alleged that Hart had caused his arrest in El Paso, Mexico, whereby he was brought back to Texas and severely treated. The defendant's counsel filed an affida-vit for continuance, but put in no plea, and the defendant, being in default, the plaintiff recovered $50,000 damages. From this judgment Hart prosecuted error. The case having been docketed in the Supreme Court, George W. Paschal, for Mills, the defendant in error, filed the fol-lowing motion:

"The defendant, W. W. Mills, by attorney, moves the court to strike this case from the docket, on the ground that before the writ of error issued, and as a necessary re-quisite thereto, the plaintiff in error should have given bond in the district court of El Paso county, with sufficient security, for all the costs which may accrue in the Supreme Court and which may have accrued in the district court; but the plaintiff did not give any such bond, or any bond whatever, as by the statute in such case provided, and there-fore the court has no jurisdiction of the cause, and the same should be dismissed.

"And the defendant says that the pretended bond on page 18 of the transcript is improperly there, and cannot be treated as a bond in accordance with the provisions of the statute, because he says that no such original paper, signed as that is, or by any parties whatever, was ever filed in the district court of El Paso county and a copy tran-scribed, as the certificate of the clerk would seem to imply. But the bond, as it appears upon its face, must have been filed with the clerk as a mere form, filled up with the sum of 'one hundred thousand dollars,' and conditioned as re-quired by the 1495th article of Paschal's Digest; but the same was not signed by any person whomsoever.

"And afterwards, to wit, on or about the 10th day of September, A. D. 1868, the bond was presented by John Hancock to the counsel of the said Mills, with the original

xxxi—20

names of 'John Hancock and Thomas J. Devine' inserted
by said Hancock as securities, with the original signatures
as they now appear, thus, in fact, making it to all intents
and purposes an original bond. And since that date, and
since the said original signatures by Devine and Brewster,
the word 'thousand' has been erased, so as to make it read
'one hundred dollars' instead of 'one hundred thousand dol-
lars;' and the word 'damages' has been erased and 'costs'
inserted, thus, in fact, destroying the legal obligation of
the instrument, if any existed, and attempting to make it
a bond for costs, under the 1517th article of the law, (Pas-
chal's Dig.,) instead of a supersedeas bond, under the 1495th
article.

"The defendant says that, under the circumstances, the
pretended approval and filing by the clerk go for nothing,
because it is thus impossible that the original or copy could
have been before him.        GEORGE W. PASCHAL,
                                                        "*For Mills.*

"George W. Paschal, being duly sworn, says that the
facts as to the alteration, as stated, are true.
                                        "GEORGE W. PASCHAL.

"Sworn to before me this 29th day of September, 1868.
                                        "GEORGE H. GRAY,
                                "*Clerk of Supreme Court.*"

The plaintiff in error filed the following affidavit:
"Personally appeared before the undersigned authority
C. S. WEST, one of the counsel for the plaintiffs in error,
who on oath states that in December, 1866, after the Su-
preme Court had granted the plaintiff in error leave to
withdraw the record then on file, and which record so
withdrawn is hereunto attached, marked exhibit B, the
counsel, believing that it would be almost impossible to
get a correct record, prepared a citation in error and a
writ-of-error bond, and sent the same to the clerk of the

district court of El Paso, accompanied with full directions
as to the preparation of the record.   Since the leave to
withdraw, exclusive of the record now on file and submitted
to the court, and numbered 3141, plaintiff's counsel have
received records marked exhibits C and D; and they state
that none of the records, B, C, or D, contain all the proceed-
ings that were had on .the trial, and that the record on
which the cause is now being tried, being record No. 3141,
is the only one that purports to be a perfect record, and that
no time has been lost by plaintiff's counsel in procuring
the record, and that they have used all the diligence they
could, and that the bond which appears in record No. 3141,
being the only record that contains a bond, was executed
subsequent to the preparing of the exhibits B, C, D, the
bond not being then in existence when these records were
prepared.   ·                                 C. S. WEST.

"Sworn to and subscribed this 19th day of October, 1868.
"GEORGE H. GRAY,
"*Clerk Supreme Court.*"

*Geo. W. Paschal,* for the motion.—I.  By the act of 1846
a writ of error could be prosecuted without bond, unless a
supersedeas was sought.  (Paschal's Dig., Art. 1495, Note
587.)   But under this act, where the party attempted to give
the bond and failed,. or gave a void bond, it was held that
the court had no jurisdiction, and such cases were dismissed.
(Johnson v. Robson,. 27 Tex., 526,) which cited and approved
Dial v. Rector, (12 Tex., 99.)   And it was also held that the
bond could not be amended after two years.   Were the
bond an immaterial thing, the supersedeas might have been
disregarded, and the court might have entertained juris-
diction, as in an original case without supersedeas.   But
not so; the jurisdiction was denied.   The objection in this
case, as in Dial v. Rector, was, that one of the obligees was
dead before the bond was executed; and in both cases affi-
davits to oust the jurisdiction were heard.  (12 Tex., 99.)

This question had been fully considered, and the practice of hearing affidavits to defeat the jurisdiction settled, in language of very strong indignation, in the case of Harris v. Hopson, 5 Tex., 529.

II. If the party here sought to give effect to the pretense of the clerk's filing his approval or a certificate of copy, the case would be one of greater aggravation than that of Harris v. Hopson, which received such strong condemnation. The act would be criminal upon the part of the clerk. (Crim. Code, Art. 347, Paschal's Dig., Art. 1973.)

III. The mischief in the act of 1846 was, that parties could encumber the records of this court with writs of error without security for costs. The remedy is restrictive of that right.

IV. It may be contended that the language " give bond" does not necessarily imply that it should be filed with the district clerk. But in appeals the language is that the party must " enter into bond," but there is nothing about filing it; yet we have seen that it must be filed in the district court within two years as a condition precedent to the appeal, and it must not be antedated. (Waterhouse v. Love, 23 Tex., 560.) There, as in this case, the two years had elapsed. And it is to be observed that the language, "no writ of error," has been held in another section to be a limitation on the right. (Waterhouse v. Love, 23 Tex., 560; Hart. Dig., Art. 560; Paschal's Dig., Arts. 1496, 4616, Notes 588, 1026.)

V. The statute of 1858 relates to judgments of dates anterior to it; it operates upon all suitors except administrators. There is no right to demand the writ of error or the record until the bond is given; and although it need not be filed simultaneously with the petition, it must be filed with the district clerk within the two years. (Peabody v. Marks, 25 Tex. 20.)

*Hancock & West*, against the motion.—I. This suit is brought to this court by writ of error from the district court

of the county of El Paso, to bring under revision a judgment of that court in favor of the defendant in error.

The final judgment in this case was rendered on 12th of September, 1866. On 22d of September, 1866, the plaintiff filed his petition for a writ of error, and on 24th day of September, 1866, without a bond having been executed by plaintiff in error as required by law, and without the issuance of a citation in error the clerk prepared what he supposed was a transcript for the Supreme Court. It was not only wanting, as before stated, in a writ-of-error bond, and in a citation in error, but the charge of the judge was wanting in his signature, the bill of exceptions appeared in the record to be without signature, the papers were copied without reference to the chronological order of their filing, and some without any note of their being filed at all, and there was no final certificate that the transcript was either complete or correct as rquired by law, (Paschal's Dig., Art. 1495,) but in its place there were as many as six separate certificates all attached together, and this *congeries* of certificates was endorsed by the clerk as demanded of him by the plaintiff in error, though his letter on file in this case, with affidavits, show that he refused to surrender it to the plaintiff in error, and in his letter declining to deliver the transcript on demand he states, "I think it is better to do so, [*i. e.*, mail it.] It has been mailed, and will leave to-morrow; (*Deo volente.*)"

When the court examines the first transcript and sees how unskilled the clerk was in his duties, and will remember that the distance to which the record was sent, instead of being delivered to plaintiff, was fully seven hundred miles, through a country infested with roving bands of Mexican robbers and hostile Indians, it will have some idea of a portion of the difficulties which the plaintiff has had to encounter in bringing this extraordinary judgment in review before the appellate court. In thus commenting on the action of the clerk we would here expressly disclaim

any imputations of willful neglect or disregard of duty on his part. His errors were the result, so far as the record shows, of inexperience alone. This first record was received and filed by the clerk of the Supreme Court on the 13th day of November, 1866, during the session of the Supreme Court, and sometime after the docket of the eleventh district (of which El Paso county forms the greater part) for that term had been called.

On the 30th day of November, 1866, the attorneys for the plaintiff in error asked leave to withdraw the record from the files, not, as the counsel seems in his motion to suggest, for the purpose of giving a bond, but because the facts showed that the plaintiff in error had not filed it at all; that it was placed on the docket without his knowledge or consent; and that it was in fact wanting in almost all the requisites of a transcript. (Paschal's Dig., Art. 1495.)

The motion of counsel to withdraw the record was granted by the Supreme Court, and steps were taken immediately by counsel of plaintiff in error to have a transcript prepared. A record was accordingly prepared here, under the direction of counsel, so far as one could be made up from the *disjecta membræ* forwarded to the clerk, and full directions given as to the issuance of the citations in error, the preparation, approval, and filing of the bond, &c., and a bond was prepared and sent forward.

A great deal of time neceessarily elapsed, and, the difficulties of communication having in the meantime greatly increased, at the October term, 1867, upon application in open court of the counsel for plaintiff in error, the attorneys for defendant in error not being personally present, the cause stood continued, as the minutes show, no record having come to hand up to that date that was in a condition to be filed. In the meantime, proper steps having been taken to procure a perfect record, the record presented and marked filed September 12, 1868, was received and

filed, containing a bond for costs, filed 1st February, 1867, and approved by the clerk on the same day.

This record the defendant in error moves to dismiss, on the ground that the original bond is not in the court below, and makes affidavits with that view. We propose to consider this motion briefly before proceeding to an examination of the merits of the cause itself.

II. A brief review of the grounds of this motion, in connection with the authorities showing the former practice of the court on this subject, will suffice to show how destitute this motion is of merit.

The cases in our own court bearing on this point, *pro* and *con.*, are as follows: Johnson v. Robson, 27 Tex., 526; Dial v. Rector, 12 Tex., 99; Harris v. Hopson, 5 Tex., 529; 22 Tex., 54; 27 Tex., 5; Martel v. Hernsheim, 9 Tex., 294. [The counsel reviewed these cases.]

That affidavits will not be received in such a case to oust the jurisdiction of the court and to impeach the verity of its records, when duly certified, is, we think, established beyond question in the cases of Brown v. Torrey, 22 Tex., 54, and Paris v. Dubose, 27 Tex., 6.

[The residue of the argument was upon the assignment of errors.]

HAMILTON, J.—This cause is before us on a motion of the defendant in error to dismiss the writ of error for want of jurisdiction in this court. The motion is predicated upon the ground that the plaintiff in error has failed to execute a bond, as required by statute, to entitle him to the writ of error.

The facts set forth in the motion are verified by the oath of the attorney of the defendant in error; and are substantially to this effect: That the bond contained in the transcript of the record is improperly there; that no such original paper, signed as that is, or by any parties whatever, was ever filed in the district court of El Paso county, and a

copy transcribed, as the certificate of the clerk would seem to imply, but, as it appears upon its face, must have been filed with the clerk as a mere form, filled up with the sum of $100,000, and conditioned as required by article 1495 of Paschal's Digest, without being signed by any person whomsoever; that about the 10th day of September, 1868, the bond was presented by John Hancock, one of the attorneys of the plaintiff in error, to the attorney of the defendant in error,. with the original names of "John Hancock and Thomas J. Devine," inserted by said Hancock, as securities, with the original signatures as they now appear; and that, since that date and the said original signatures by Devine and Brewster, the word "thousand" has been erased, so as to make it read "one hundred" dollars instead of "one hundred thousand" dollars, and the word "damages" erased and the word "costs" inserted, thus changing its character from a supersedeas bond under article 1495 of Paschal's Digest, to a bond for costs under article 1517.

We will consider first the question whether this court can properly admit proof by affidavit to impair or contradict the transcript of the bond as contained in the record.

This question has been so often decided, and is now so well settled in this court, that we should not have deemed it necessary to do more than refer to one or two cases but for the apparent earnestness with which the learned counsel for the plaintiff in error insists that upon authority affidavits cannot be received for such purpose, and cite a number of cases decided by this court, which they seem to regard as establishing their position.

It is very apparent to the court that in the cases cited these able attorneys have not discriminated as clearly as might have been expected between cases affecting the jurisdiction of this court upon facts established by proof, *aliunde*, and cases where it was sought to invalidate the judgment of the court below in the same manner.

It has been the settled law of this court, since the decision in the case of Harris v. Hopson, 5 Tex., 529, that proof, *aliunde*, will be heard touching the question of its jurisdiction, and there have been quite a number of cases since in which the doctrine in that case has been followed, and in no case denied or seriously doubted. Such was the ruling in the case of Martel v. Hernsheim, 9 Tex., 294, in which case, where a judgment had been affirmed upon appeal in 1849, it was annulled and vacated in 1852 upon evidence that at the time of the affirmance the appellee was dead. In the case of Dial v. Rector, 12 Tex., 99, affidavits were received to prove the execution of the appeal bond after the death of the obligees. And in the case of Johnson v. Robson, 27 Tex., 526, it was held that an error bond made payable to two persons, plaintiffs below, one of whom was dead at the filing of the same, is a nullity, and gives no jurisdiction of the case on the writ of error to the Supreme Court.

In the case first cited (Harris v. Hopson) the case was dismissed upon affidavits showing that the bond was a forgery and a fraud upon the court. In each and all of these cases there was nothing appearing upon the face of the record to oust the jurisdiction of this court; on the contrary, the facts were made to appear in each of them by proof, *aliunde*.

The distinction between these cases and the cases of Brown v. Torrey, 22 Tex., 54, and Paris v. DuBose, 27 Tex., 6, relied on by the counsel for plaintiff in error, is very marked; the line is clearly and broadly drawn. In the cases first mentioned the principle is settled that this court has and should, for its own protection, exercise the power of hearing testimony, *aliunde*, touching any fact necessary to give it jurisdiction, where such fact is seriously called in question, and to determine the issue made upon the proofs submitted.

In the last-mentioned cases it was attempted, by proof,

*aliunde,* to attack and overturn the judgment of the court below.

In the case of Brown v. Torrey, 22 Tex., the plaintiff in error sought to reverse the judgment on the ground that one of the plaintiffs below was dead at the date of its rendition, and submitted affidavits in proof of the fact. But this was not a question or fact affecting the jurisdiction of the appellate court, and, the fact not appearing of record, it was palpably not the subject of revision. The court, in disposing of the case, proceeds to say : " Nothing can be more clear than that this court can only revise the judgment of the district court for errors apparent upon the record. To entertain the question of fact for decision for the first time in this court as a ground for reversing the judgment would be plainly violative of the constitution, which confers upon this court, in reference to the judgments of the district court, appellate jurisdiction only." The opinion then concludes as follows : " This case is plainly distinguishable from those in which affidavits have been received by this court upon the question of its own jurisdiction," citing the cases of Harris v. Hopson, Dial v. Rector, and Martel v. Hernsheim.

The case of Paris v. Du Bose, in 27 Tex., 6, is, in principle, precisely like the case of Brown v. Torrey, just referred to. Affidavits were offered in this court to impeach the return of the sheriff upon the citation to the defendant below, and thus invalidate the judgment of the district court upon a question not presented in the record.

Thus it will be seen that the cases cited and relied on by the counsel for plaintiff in error do not raise any question as to the jurisdiction of this court, but, on the contrary, are in fact cases in which the extraordinary request is made of an appellate court to determine the jurisdiction of the court below by proof, *aliunde.*

It certainly requires no argument to place the case at bar in the category of those where the jurisdiction of this court

is called in question. The facts stated in the motion and affidavit go directly to the question of jurisdiction, and not beyond it. The determination of this court is sought upon the question of jurisdiction alone. Neither the judgment below nor any of the antecedent proceedings are called in question; and therefore, in conformity with the settled doc· trine of this court, we feel authorized to hear testimony to determine whether or not we have jurisdiction of the case, and this leads us to inquire what facts the testimony discloses.

This motion was filed on the 1st of October, 1868. There are no affidavits or other statements contravening the facts as stated in the motion, except the remark, *arguendo*, in the brief of plaintiff in error, that "if all the statements in defendant's affidavit were true, it would only show that there were two original bonds instead of one, unless he can, by his affidavit, contradict and falsify the record."

If it were an ascertained fact that the bond had been executed in duplicate by the obligees, and one of them adopted by the clerk as a copy and incorporated in the record, and the other filed in his office as the original, it is not perceived that an objection on that ground could be reasonably sustained. Such, however, so far as we are advised, has never been the practice in any case in this state, and the presumption in favor of such a proceeding could not be fairly indulged against facts strongly tending to prove the contrary.

The attorney for defendant in error swears that "about the 10th day of September, 1868, the bond was presented by John Hancock (one of the attorneys of the plaintiff in error) to the counsel of the defendant in error, with the original names of 'John Hancock' and 'Thomas J. Devine' inserted by said Hancock as securities, with the original signatures as they now appear; and that since that date, and since the said original signatures by Devine and Brewster, (the latter having signed the name of the plaintiff in

error, as his attorney in fact,) the words 'thousand' and 'damages' have been erased, and in place of the latter the word 'costs' inserted."

The affidavit of the attorney for the defendant in error does not state whether the bond, when exhibited to him about the 10th of September, was incorporated in the record or not, but we must presume that it was, for it should have been there, as contemplated by the statute.

The record was made up and certified to by the district clerk of El Paso county on the 2d day of February, 1867. In his certificate the clerk says: "The above (meaning the page upon which the certificate is written) and twenty-two other pages hereto attached contain a true copy," &c.; and looking to the record we find the precise number of pages mentioned in the certificate, including the bond in question, which constitutes page 18; and the bond thus presented in the record is, with the exception of the names of the securities, set forth in the body of the instrument, and the signatures thereto, in the same handwriting of every other portion of the record, including the certificate and signature of the clerk of El Paso county.

Every reasonable presumption in favor of the correctness of the action of the clerk and of the truth of his certificate must be indulged. It must, therefore, be considered that the bond formed a part of the record when certified to by the clerk. This legal presumption is strengthened, as we have shown, by the record itself presenting the number of pages certified to by the clerk, coupled with the fact that the bond as therein contained is in his handwriting, with the exception of the signatures thereto and the names of the securities in the body of the instrument. Moreover, the approval of the bond is indorsed, dated, and signed by the clerk, on the 1st day of February, 1867.

Now, in view of the facts stated by the attorney for the defendant in error in his affidavit, one of two propositions must be true: the clerk approved either a blank and unex-

ecuted bond or a bond executed for $100,000, and conditioned as required by Paschal's Digest, article 1495.

We cannot presume against the proper discharge of duty by the clerk, and are therefore constrained to adopt the latter conclusion. But in either case the hypothesis of the counsel for the plaintiff in error, that the bond was executed in duplicate, is clearly excluded; for if it was a supersedeas bond, in conformity with Paschal's Digest, article 1495, then the bond presented in the record is not a duplicate or copy; and if a bond for costs, under the provisions of Paschal's Digest, article 1517, it was widely different from the bond actually certified to by the clerk, as testified to by the attorney of defendant in error, when exhibited to him about the 10th of September last. The presumption to be indulged in favor of the acts of the clerk is altogether consistent with the facts stated in the affidavit of the attorney for defendant in error, while the hypothesis of the bond, as now presented in the record, being executed in duplicate, is entirely overturned and destroyed by the uncontested affidavit in support of the motion to dismiss.

It is thus made manifest that the bond has been materially changed since the record was made out and certified to by the clerk. As already intimated, we are bound to conclude, both from the facts stated in the affidavit filed and upon legitimate presumption in favor of the acts of a public officer, that the bond certified to by the clerk as a part of the record was the bond exhibited to the attorney of defendant in error, in the month of September last, as testified to by him, a supersedeas bond in the sum of $100,000, and conditioned as required by Paschal's Digest, article 1495.

The fact of the alteration of the bond being established, we are to determine the legal effect of the change.

By act of 1846 (Paschal's Dig., Art. 1495) writs of error could be sued out and prosecuted in this court without bond; but by the act of 1858 (Paschal's Dig., Art. 1517)

this right was restricted. The act provides that "no writ of error to remove a cause from the district to the Supreme Court shall in any case issue, unless the plaintiff in error give bond with sufficient security for all the costs which may accrue in the Supreme Court, and which may have accrued in the district court."

Where and when is such bond to be executed, and by whom is it to be approved?

In the case of Peabody v. Marks, *et al.*, 25 Tex., 19, it is declared that " the act of 5th February, 1858, which provides that the plaintiff in error shall give bond for all costs taken in connection with the act of the 13th May, 1846, requires the execution of the bond within two years from the rendition of the judgment sought to be revised." And the court proceeded further to say: "The filing of the petition and the filing of the bond need not be simultaneous; but the right to the writ of error can only be secured by the filing of both before the expiration of two years after the rendition of judgment."

That this is the intendment of the statute, is, we think, very obvious. The language employed in the act of 1858 admits of no other construction. "No writ of error to remove a cause from the district to the Supreme Court shall in any case issue, unless the plaintiff in error give bond with sufficient security," &c. The execution of the bond is a condition precedent, to be performed by the plaintiff in error to entitle him to the writ, and is indispensable as authority to the clerk for its issuance. If the clerk assume to act in contempt of the plain provision of the statute, his act is a nullity. Where "no bond has been given, as the statute requires, the writ was obtained contrary to law and must consequently be dismissed." ( Waterhouse v. Love, 23 Tex., 560.)

We have seen, upon the authority of the case of Peabody v. Marks *et al.*, 25 Tex., 19, that the filing of the petition and the filing of the bond need not be simultaneous,

but the right to the writ of error can only be secured by the filing of both before the expiration of two years after the rendition of judgment. There can be no serious doubt as to where and with whom the bond is to be filed. The clerk of the district court where the judgment is rendered which is sought to be revised is the custodian of all the original papers which are to be embraced in the record, which by law it is his duty to prepare for this court, and, the bond being an indispensable part of the record, the law intends that it shall be filed in his office and remain in his custody. Moreover, he is the proper and the only party who, in the first instance, is to judge of the sufficiency of the bond, its form and conditions, and the solvency and responsibility of the obligors, for the reason that, apart from his own interest in respect of his costs, he is, in his official capacity, acting as the sworn trustee of other parties interested in the costs or damages, as the case may be; and, finally, his possession and approval, express or fairly implied, of the bond, are, in contemplation of the statutes, essential to the legal exercise of power in issuing the writ of error.

We are not called upon to decide hypothetical cases, and need not therefore determine whether a writ of error, issued without bond, could by relation back be validated by the execution and filing of a bond in the proper office afterwards. Such a case, if it shall ever arise, will be decided when presented; and, without intending prejudice to the solution of the question in the future, we content ourselves with the expression of a serious doubt whether, under any circumstances, such a proceeding would be tolerated. It is very certain that such a practice is to be reprehended, and will never receive the encouragement of this court. We feel no hesitation in saying that a writ of error, issued without bond, could not be validated afterwards by the execution of a bond not filed with or approved by the clerk of the district court in which the judgment was ren-

dered, not embraced in the record, and which makes its appearance for the first time in this court as a paper in the cause.

And now to apply these principles to the case at bar. We have, we think, fully shown from the affidavit of the counsel of defendant in error that the bond as now presented in the record is not the bond certified to by the clerk, and consequently not the bond filed with and approved by him.

The affidavit of the counsel of defendant in error states that "on or about the 10th day of September last (1868) the bond was exhibited to him by the counsel for plaintiff, (and which we must suppose was then as now a part of the transcript of the record,) and that when so presented it contained the original names of John Hancock and Thomas J. Devine, inserted by said Hancock, as securities, with the original signatures as they now appear," and that "since that date, and since the said original signatures by Devine and Brewster, the word 'thousand' has been erased, so as to make it read 'one hundred dollars' instead of 'one hundred thousand dollars,' and the word 'damages' has been erased and 'costs' inserted." Two days thereafter, to wit, on the 12th of September, 1868, the record was filed in this court, as appears from the indorsement of the clerk of this court. Now, there can be no pretense that the bond as it now exists in the record is the bond certified to by the clerk on the 2d day of February, 1867, nor yet that after the 10th and before the 12th of September last a change of bonds was effected in the office of the district clerk of El Paso county, for this we declare, from our geographical knowledge of the distance from this court to the county of El Paso and the mode of travel, to have been an impossibility. Thus, as stated in the preceding part of this opinion, we are constrained to couple with the affidavit of the counsel of defendant in error the presumption that the bond certified to by the clerk was the

bond exhibited to the attorney of defendant in error on or about the 10th day of September, 1868, and that it has been since changed as stated.

The high character and known integrity of the attorney for defendant in error, who makes the affidavit, precludes any doubt of the truth of his statement; but if cumulative evidence were needed, it is to be found in the transcript of the bond as contained in the record. As we have before stated, this, as it appears in the record, is, with the exception of the names of the securities as contained in the body of the instrument, the signatures of the obligors, and the word "costs," in the same handwriting as every other portion of the record, including the certificate and signature of the clerk, and the words "thousand" and "damages," have been erased by lines drawn across them. The view which we have taken presents, then, this state of case: The bond was executed and approved as a supersedeas bond in double the amount of the judgment, and for damages, and is so operating in El Paso county, while in this court it is but a bond for costs. The only alternative hypothesis will not aid the plaintiff in error, and that is, that the bond was executed in blank, or that it was a mere blank form; for in either case it would be a nullity, and could not support the writ of error.

It is needless to tax our imagination to present all the evils which would flow from tolerating the practice presented in this case. It will suffice to say that, if permitted, it must inevitably and most effectually destroy the safeguards created by the statutes for the protection of the rights of appellees and defendants in error, and for the protection also of this court from an improper exercise of its jurisdiction, invoked upon assumed facts, which have no real existence.

We disclaim any intention of deciding whether or not, after a petition for writ of error and the filing of a supersedeas bond, the plaintiff in error will be permitted to with-

draw such bond and file a bond for costs, but, if permitted, there can be no question as to the necessity of filing the latter in the proper district clerk's office.

There is one feature of the case that remains to be noticed. It would seem from the statement of the attorney for defendant in error in his affidavit and from our inspection of the record that the original bond, instead of a transcript or copy, was incorporated in and made a part of the record. This we suppose to have resulted from ignorance of duty and inexperience on the part of the clerk. This in no way changes the legal aspect of the case, and would not, we think, in any case seriously prejudice the rights of an appellant or plaintiff in error.

We have examined the statutes and the decisions of this court bearing upon this case with more than ordinary care, both because of its intrinsic importance in the practice in this court and the earnestness and ability with which the counsel on either side have presented it. And we have felt more than common solicitude to settle the question raised on such grounds as would meet the approval of an enlightened bar. With our best efforts we can reach but one conclusion, and that is, that the motion must be sustained. The writ of error is

DISMISSED.